UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                Chapter 11

LENY Berry Holdings LLC,                              Case No. 24-42947 (ESS)
LENY Berry Mezz LLC,                                  Case No. 24-41452 (ESS)

                                   Debtor.
---------------------------------------------------------------x

## DEBTOR'S CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION

LENY Berry Holdings LLC and LENY Berry Mezz LLC (collectively, the "<u>Debtor</u>")

hereby propose the following Chapter 11 liquidating plan of reorganization (the "<u>Plan</u>") pursuant

to the provisions of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

## FRAMEWORK OF THE PLAN

The Plan represents the implementing apparatus to complete a jointly coordinated effort by

the Debtor and its secured creditor, WF CREL 2020 Grantor Trust (the "<u>Lender</u>") to pursue a sale

of the Debtor's Property and distribute the proceeds in accordance with the priority scheme under

the Bankruptcy Code.  Contemporaneously herewith, the Debtor has filed respective motions to

use cash collateral [ECF No. 4] and approve bidding procedures [ECF No. 7].  These filings will

permit the sale process to proceed in a relatively rapid fashion with a tentative outside closing date

of October 31, 2024 following an auction on September 12, 2024. The Debtor intends to seek

Bankruptcy Court approval of the auction results simultaneously with the hearing to consider

confirmation of this Plan, with a closing to follow shortly thereafter so the transaction qualifies for

transfer tax exemptions under 11 U.S.C. §1146(a).

The goal of the Chapter 11 case is to pursue a robust sale process while recognizing the

Lender's credit bid rights up to the allowed amount of its secured claim in the sum of at least

$80,317,112.78.  Regardless of the outcome of the Auction sale, the Lender has committed to make

available sufficient funds first from Property cashflow or Sale Proceeds to satisfy administrative expenses as capped and budgeted pursuant to the , any outstanding priority tax claims and U.S. Trustee fees plus establish a general creditor reserve of $100,000 (the "<u>Creditor Reserve</u>") from which a *pro rata* distribution shall be made to the holders of allowed unsecured claims.

## ARTICLE I

## <u>DEFINITIONS</u>

All capitalized terms used herein shall have the meanings set forth below.

1.1     "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Property; (b) the awarded compensation and reimbursement of expenses for the Debtor's bankruptcy counsel and other professionals; and (c) the agreed compensation of Ephraim Diamond pursuant to agreements designating him as the Debtor's Restructuring Officer ("<u>CRO</u>").

1.2     "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has scheduled by the Debtor as being liquidated and undisputed, and as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Plan; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.3     "**Approved Bid Procedures**" shall mean the final bid procedures approved by the Bankruptcy Court for conducting the Auction for the Property, replete with Credit Bid rights and other matters appurtenant thereto.

1.4     "**Available Cash**" means all Cash of the Debtor as of the Effective Date, including the Sale Proceeds and/or deposits in the Debtor in Possession Account.  This definition shall include any excess property cash flow over budgeted items for any month that has been provisionally paid to the Lender consistent with the Cash Collateral Order prior to the Effective Date.

1.5     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.6     "**Bar Date**" means the last dates set by the Bankruptcy Court to file a Claim against the Debtor.

1.7    "**Broker**" means the person or firm engaged by the Debtor and approved by the Bankruptcy Court to market and sell the Property (anticipated to be Eastdil Secured LLC).

1.8    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.9    "**Cash**" means on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be provided in this Plan or in the Confirmation Order) no later than the next Business Day.

1.10    "**Cash Collateral Order**" means any operative interim order or final order authorizing the use of the Lender's "cash collateral" entered by the Bankruptcy Court in this Chapter 11 case and in effect on the Effective Date.

1.11    "**Case**" means the applicable bankruptcy case of the Debtor.

1.12    "**Cause of Action**" means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suit damages, judgments, claims and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise.

1.13    "**Claim**" means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.14    "**Claim Objection Deadline**" shall mean ten (10) business days after the Effective Date of the Plan.

1.15    "**Closing**" means the day when the Debtor consummates and closes on the Sale of the Property pursuant to the Confirmation Order.

1.16    "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.17    "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.18    "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.19    "**Credit Bid Rights**" means the right of the Lender pursuant to 11 U.S.C. §363(k) to bid its allowed claims at the Auction in accordance with the Approved Bid Procedures.

1.20    "**Creditor**" means the holder of a Claim against the Debtor.

1.21 **"Creditor Reserve"** has the meaning set forth under "Framework of the Plan."

1.22 **"CRO"** has the meaning set forth above in the definition of "Administrative Expense Claim."

1.23 **"Disputed Claim"** means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim (including an Administrative Expense), or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

1.24 **"Disbursing Agent"** means Goldberg Weprin Finkel Goldstein LLP.

1.25 **"Disputed Claim Reserve"** means the escrow established by the Debtor at the Closing with the Disbursing or Escrow Agent for the deposit of cash reserves to secure payment of the disputed portion of a creditor's particular claim.

1.26 **"Effective Date"** means the Closing date on the Sale of the Property, to occur no later than October 31, 2024.

1.27 **"Equity Interests"** means the Debtor's membership interests held by the affiliated Debtor LENY Berry Mezz LLC.

1.28 **"Escrow Agent"** means Goldberg Weprin Finkel Goldstein LLP.

1.29 **"Final Order"** means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or no longer appealable but if, affirmed on appeal with no further appeals possible. However, the Confirmation Order shall be deemed a Final Order on the first Business Day after entry thereof so long as no stay of a Court of competent jurisdiction staying consummation of the Plan.

1.30 **"Interests"** means any and all equity interests held in the Debtor.

1.31 **"Petition Date"** means July 17, 2024, the date on which the voluntary petition commencing this Chapter 11 case was filed.

1.32 **"Priority Tax Claim"** means any Unsecured Claim of a federal, state or local taxing authority for real estate taxes and related charges.

1.33 **"Professional"** means all professionals employed by the Debtor under section 327 of the Bankruptcy Code.

1.34 **"Professional Fee Claim"** means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by the Bankruptcy Court.

1.35  "**Proof of Claim**" means a Proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and the applicable Bankruptcy Rules.

1.36  "**Property**" means the mixed-use residential and commercial property located at 103-113 North 3rd Street and 188-190 Berry Street, Brooklyn, New York.  This definition includes any and all Property Causes of Auction.

1.37  "**Property Causes of Action**" means Causes of Action that run with or directly relate to the Property.

1.38  "**Property Transfer Instruments**" means the conventional conveying documents and instruments, including a Bargain and Sale Deed and Assignments and Rents, required to effect a transfer of real property in New York City, as authorized to be executed, delivered, and recorded pursuant to the Confirmation Order.

1.39  "**Qualified Bidder**" means a person or entity designated in accordance with the Approved Bid Procedures as being eligible to submit a bid at the Auction.

1.40  "**Sale**" means the sale of the Property and the Property Causes of Action pursuant to the Approved Bid Procedures.

1.41  "**Sale Proceeds**" means the cash proceeds generated from the sale of the Property and qualified third-party bidder acceptable to the Lender unless the Lender itself credit bids for the Property.

1.42  "**Successful Purchaser**" means the bidder acceptable to the Lender who made the highest and/or best bid for the Property unless the Lender credit bids for the Property.

1.43  "**Transfer Taxes**" means, without limitation, (a) New York City and New York State or other applicable local real property deed and transfer taxes and mortgage recording taxes as applicable relating to financing for the sale, and (b) any and all other stamp taxes or similar taxes, which are exempt pursuant to § 1146(a) of the Bankruptcy Code, based upon a transfer of the Property made in accordance with, pursuant to, or in furtherance of the Plan.

1.44  "**Unsecured Claim**" means an allowed general unsecured claim arising prior to the Petition Date not entitled to priority under the Bankruptcy Code or otherwise secured by property of the Debtor.

1.45  "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against the Debtor.

1.46  "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

## ARTICLE II

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

2.1 **Administrative Expense Claims**. Administrative Expense Claims primarily consist of the costs and expenses of maintaining, preserving, and selling the Property, including allowed brokerage commissions to the extent not paid as a Buyer's premium, and allowed Professional Fees for the Debtor's counsel subject to a cap of $150,000 and the fees of Ephraim Diamond as the Debtor's Chief Restructuring Officer (previously defined as "CRO") as budgeted. Each holder of an Allowed Administrative Expense Claim, as determined by the Bankruptcy Court, shall be paid the full amount of such allowed claim on the Effective Date (subject to all caps), in cash, or as soon thereafter as is practicable, either (i) from Available Cash (including the Sale Proceeds) or (ii) the Lender's contribution defined below. To the extent the Lender is the successful purchaser of the Property based upon its credit bid rights, the Lender shall be responsible to pay, to the extent not previously paid from (or reserved-for in) Available Cash, (i) Allowed Administrative Expense Claims (including the CRO's compensation as budgeted in the Cash Collateral Order and Professional Fees as capped in the Cash Collateral Order but excluding any other item not capped and/or budgeted as part of the Cash Collateral Order, including excluding any commercial tort or similar claims arising after the Petition Date); (ii) Priority Tax Claims, and (iii) the Creditor Reserve (items (i), (ii) and (iii) hereafter referred to collectively as the "Lender's Contribution"). All Administrative Expense Claims must be filed and served no later than thirty (30) days following the Effective Date. Without limiting the generality of the

foregoing, nothing contained in this Plan shall be intended or shall be deemed to impose any personal or other individual liability against the Lender or otherwise supersede or subordinate the validity and priority of the Lender's lien in and to the Property for or to any Claim against the Debtor, including any Claim relating in any manner whatsoever to the Property, including, without limitation, any claim relating to the operation of the Property or any claim constituting a personal injury tort, a commercial tort, or otherwise.  Again, for avoidance of doubt,  it is expected that there will be sufficient cash flow from the Property or Sale Proceeds to fund all distributions under this Plan and the Creditor Reserve.  Accordingly, the Lender's Contribution shall be sourced <u>first</u> from Available Cash (including the Sale Proceeds) and then, to the extent and in the unlikely event that Available Cash is not sufficient to pay (i) capped and/or budgeted items per the Cash Collateral Order that constitute Allowed Administrative Expense Claims, (ii) Allowed Priority Tax Claims, (iii) U.S. Trustee Fees, and (iv) the Creditor Reserve, a cash contribution from the Lender.

2.2     **<u>Professional Fees</u>**.  All Professionals seeking an award of compensation shall file their respective final applications for services rendered at or prior to the Closing Date no later than thirty (30) days after the Effective Date.  After notice and a hearing, the allowed Professional Fee Claims shall be paid, to the extent not previously paid from (or reserved for in) Available Cash, from the Sale Proceeds in the event of a sale of the Property to a third-party buyer or from the Lender's Contribution.  If the Closing occurs prior to the time that applications for Professional Fee Claims are heard and determined by the Bankruptcy Court, then appropriate reserves shall be established at the Closing to be used to pay the requested amounts when approved.

2.3     **<u>Priority Tax Claims</u>**.  Any open and outstanding real estate taxes, liens and related water charges that may be due as of the Effective Date shall be treated as Priority Tax Claims for the purposes of the Plan.  All Allowed Priority Tax Claims shall be paid in full, in cash, from the

Available Cash or from the Lender's Contribution as applicable (i) to the extent such Priority Tax Claims are due and owing by their terms or statute on such date, on the Effective Date or (ii) except as provided in the succeeding sentences of this Section 2.3, to the extent that such Priority Tax Claims are not due on the Effective Date, no later than the date such Priority Tax Claims are due by their terms or by statute.  Consistent with the foregoing, the next installment of real property taxes (and related charges) relating to the Property owing to New York City in the amount of $543,968.84 is due on January 1, 2025.  As set forth in Section 3.4(a), the Property will not be sold free and clear of any real property taxes (and related charges).  Accordingly, this installment shall be the responsibility of the Successful Purchaser, and there will be no distribution under this Plan on account thereof.

2.4    **U.S. Trustee Fees**.  The Debtor shall pay all outstanding U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 case is closed by entry of a final decree. To the extent that such fees have not been previously paid from (or reserved-for in) Available Cash, the Debtor shall use the Available Cash or the Lender's Contribution as applicable to pay the U.S. Trustee Fees as well.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

3.1    **Summary**.  The categories listed below classify Claims and Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Allowed Secured Claim of the Lender | Yes | Yes |
| Class 2 | Allowed General Unsecured Claims including any claims of contractors, service providers and vendors | Yes | Yes |
| Class 3 | Equity Interests | N/A | N/A |

**Class 1: The Allowed Secured Claims of the Lender**

3.1    **Classification** – Class 1 consists of the total Allowed Secured Claim of the Lender as more fully delineated and acknowledged in the Cash Collateral Order in the sum of at least $80,317,112.78, including all principal, interest, default interest, fees and protective advances.

**Treatment** – The Lender shall be entitled to alternate treatment depending on whether a third-party buyer emerges (acceptable to the Lender) as making the highest and best offer to acquire the Property, or the Lender exercises its Credit Bid Rights and purchases the Property per the exercise of such Credit Bid Rights and in exchange for the Lender's Contribution. Under scenario number one, should the Property be sold to a third-party buyer acceptable to the Lender, the Lender shall be entitled to all net Sale Proceeds up to the full amount of its allowed secured claim, after payment is made to the holders of allowed Administrative Expense Claims (as capped and budgeted but, again, for avoidance of doubt, excluding any Administrative Expense Claim consisting of any personal injury tort claim, commercial tort claim, or otherwise), Priority Tax Claims, U.S. Trustee Fees and the Creditor Reserve to the extent such payment was not previously made from (or reserved-for in) Available Cash.  If Lender (or its nominee, designee or assignee) is the Purchaser of the Property pursuant to the credit bid, it shall receive a transfer conveyance of the Property as provided below.

Notwithstanding anything herein to the contrary, the Lender (or its nominee, designee or assignee), although under no obligation to do so, is entitled to credit bid up to and including the

total amount of its allowed claim as of the Auction Date for the Property pursuant to 11 U.S.C. § 363(k). In the event of a credit bid by the Lender or its assignee, designee, or nominee), then, in such event, the Lender shall have a Class 2 deficiency claim which the Lender may vote, but the Lender waives any right to receive a *pro rata* dividend based upon distribution of the Creditor Reserve; provided, however, to the extent that there are any net recoveries under any Causes of Action that do not constitute Property Causes of Action, the Lender shall have the right to receive a *pro rata* dividend with other Class 2 Creditors on account of any such deficiency in and to any such net recoveries. In addition, the Debtor consents to the validity of the Lender's Claim and Loan Documents and will not object to any Claim filed by the Lender.  Consistent with the foregoing, the Lender's Claim shall be deemed Allowed pursuant to the provisions of this Plan in the amount of at least $80,317,112.78 and the Lender, without limiting the generality of such Allowance, shall be deemed released from Causes of Action against it, its successors and assignees, its affiliates, and their respective officers, directors, employees, attorneys, and agents, if any, belonging to the Debtor or its estate, with such release being effective upon the Effective Date.

Under either scenario, and except solely where (and to the extent that) the Sale has enabled the Lender to receive payment in full in cash of its entire Allowed Claim, the Lender further shall be entitled to receive and retain as its own property on the Effective Date any Cash Collateral remaining after the payment, or the establishment of adequate reserves for the payment, of all Allowed Administrative Expense Claims as capped and/or budgeted per the Cash Collateral Order, all Allowed Priority Tax Claims, U.S. Trustee Fees, and the Creditor Reserve.

Notwithstanding anything herein to the contrary, nothing contained in this Plan is intended to discharge, release, or otherwise limit any of the Lender's claims, rights, and/or remedies,

whether under any agreement (including any guaranty) or whether under applicable law, against (1) any person or entity, including any guarantor, who or that may be liable with the Debtor on or for any portion of the Lender's Claim or (2) any such person or entity's property.

**Voting** – The Lender is impaired under the Plan, although by virtue of the parties agreement (or anticipated Agreement), the Lender is anticipated to support the Plan.

## Class 2: Unsecured Claims

**Classification** – The Debtor is classifying all other claims against the Debtor or the Property as being fully unsecured with the final allowed amounts thereof subject to final review and reconciliation by the CRO and order of the Bankruptcy Court.

**Treatment** – To the extent that any residual Sale Proceeds become available from the sale of the Property based on a bona fide third-party sale offer satisfactory to the Lender (after payment of Administrative Expense Claims (as capped and/or budgeted per the Cash Collateral Order but, again for avoidance of doubt, excluding any Administrative Expense Claim consisting of any personal injury tort claim, commercial tort claim, or otherwise), Priority Tax Claims, and the Allowed Class 1 Secured Claim of the Lender in the amount of at least $80,317,112.78 or in such other amount as the Lender's agrees), the holder of allowed Class 2 Unsecured Claims (other than tort claims) shall be paid and receive a *pro rata* dividend from the residual Sale Proceeds. More likely, however, and particularly in the event of a credit bid by the Lender without receipt of an acceptable third-party offer, then, allowed Class 2 Unsecured Claims (other than tort claims) shall be paid and receive a *pro rata* dividend based upon distribution of the Creditor Reserve.  To the extent that a Class 2 Unsecured Claim constitutes a tort claim, the holder of such Claim's sole source of recovery shall consist of and be limited to any available insurance coverage.

**Voting** – The Class 2 Claims of Allowed General Unsecured Creditors are impaired and eligible to vote on the Plan.

**Class 3:  Equity Interests**

3.2    **Classification** – Class 3 consists of the Equity Interests in the Debtor.

**Treatment** – No payments, if any, shall be made on account of equity interests in the Debtor unless and until all other secured, priority and unsecured claims have been paid in full with interest and the Debtor's Chapter 11 case has been fully administered and closed.

**Voting** – While Class 3 equity interests are impaired under the Plan as insiders, they are not entitled to vote on the Plan.

## MEANS FOR IMPLEMENTATION OF THE PLAN

3.3    **Sale Free and Clear of All Claims, Liens, Taxes and Interests.**  The Plan shall be implemented and funded through the sale of the Property in accordance with the Auction sale process conducted pursuant to the terms of the Approved Bid Procedures.  The results of the Auction, whether based upon the Lender's credit bid or an acceptable third-party buyer satisfactory to the Lender (in either event, the "Successful Purchaser"), shall be confirmed at the Confirmation Hearing and incorporated as part of the Plan and Confirmation Order.

3.4    **Provisions Relating to the Sale Process.**

(a)    **Free and Clear Sale**.  Except as provided in the succeeding sentences of this Section 3.4(a), the transfer of the Property to the Successful Purchaser shall be effectuated pursuant to the Confirmation Order, free and clear of all Liens, Claims, Taxes and Interests pursuant to 11. U.S.C. §§ 363(b), (f) and 1123 (a)(5).  The Property shall not be sold free and clear of any real property taxes (and related charges) owing to New York City, and the payment of the next installment thereof, in the amount of $543,698.84 and due on January 1, 2025, shall be the responsibility of the Successful Purchaser.

(b)    **Sale Approval Order**.  The sale to the Successful Purchaser shall be subject to approval of the Bankruptcy Court under 11 U.S.C. § 363(b), (f) through confirmation of the Plan and entry of the Confirmation Order.

(c)    **Deadline to Close**.  The Sale shall close by October 31, 2024 or such later date as is agreed to by the Debtor and the Lender.

(d)    **Transfer of Assets**.  The Property shall remain in the Debtor's Estate under § 541(a) of the Bankruptcy Code until the Effective Date of the Plan.  Upon closing of a Sale, the Property shall be transferred and conveyed to the Successful Purchaser as provided in Section 3.4(a) above.  The Confirmation Order shall contain appropriate provisions authorizing and directing the Debtor acting by and through the CRO to execute or deliver, or to join in the execution or delivery, on the Closing of all Property Transfer Instruments and to perform any act that is necessary for the consummation of the Plan.

(e)    **Distribution of Third-Party Sale Proceeds**.  The Sale Proceeds realized from the sale of the Property to an acceptable bona fide third-party buyer satisfactory to the Lender shall be distributed in conjunction with other Available Cash to the holders of Allowed Claims and Interests in the following order:

First, to holders of Allowed Administrative Expense Claims as budgeted pursuant to the Cash Collateral Order subject to the agreed caps (but excluding, for avoidance of doubt, any Administrative Expense Claims consisting of any personal injury tort, commercial tort, or otherwise) and allowed Priority Tax Claims;
Second, to the Lender up to the amount of its allowed Secured Claim subject to the Creditor Reserve.
Third, to Class 2 unsecured creditors (other than tort claimants) to the extent funds are available to pay a *pro rata* distribution from either the residual Sale Proceeds or the Creditor Reserve.

(f)    **Distribution of the Lender's Contribution**.  In the event of a credit bid by the Lender, with the Lender being deemed the Successful Purchaser, and to the extent of any deficiency in Available Cash for the payment of the Allowed Claims under "First" in Section 3.4(e) and the Creditor Reserve on the Effective Date, the Lender shall pay to the Debtor's estate the Lender's Contribution in an amount equal to any deficiency in consideration for the transfer of the Property free and clear of all claims, liens and interests.

3.5    **Transfer Taxes**.  The sale of the Property constitutes the making or delivery of instruments of transfer of property or otherwise, pursuant to or in connection with confirmation of

the Plan, and, therefore, to the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, including an issuance of any Property Transfer Instruments, including any Bargain and Sale and Deed executed by the Debtor, shall not be subject under any law imposing a stamp tax, mortgage recording tax as applicable relating to financing for the sale, real estate transfer tax or similar tax (previously defined as, the "Transfer Taxes").  Accordingly, the appropriate officials or agents of state or local governmental unit, including New York State and the City Register for the County of Kings, shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes.

3.6     **Preservation of Causes of Action.**  Effective on the Effective Date, the Debtor waives any and all claims, Causes of Action, damages, or remedies relating in any manner whatsoever to the Lender or its claims, which Lender claims are Allowed pursuant to the provisions of this Plan.  Such release shall be effective as of the Effective Date and shall extend to the Lender, its successors and assigns, and its affiliates (and their respective successors and assigns, affiliates, officers, directors, employees, attorneys, and agents).  All other claims, Causes of Action, damages or remedies belonging to the Debtor's estate relating to any prior transactions (including any avoidance claims under the Bankruptcy Code or state law) shall be preserved for the benefit of the Debtor's estate, and (i) to the extent that any such retained claims, Causes of Action, damages or remedies constitute Property Causes of Action, such Property Causes of Action shall be transferred, free and clean of any and all Liens, Claims, Taxes and Interests pursuant to 11 U.S.C §§363(b), (f) and 1123(a)(5), to the Successful Purchaser and (ii) any recoveries from any retained

Causes of Action not constituting Property Causes of Action shall be distributed in accordance with the priority structure set forth in the Bankruptcy Code and/or applicable order(s) of the Court.

## ARTICLE IV

## DISTRIBUTIONS

4.1    **Method of Payment**.  Unless otherwise expressly agreed, in writing, payments to be made pursuant to the Plan shall be made at the times and in the amounts set forth in the Plan by either electronic funds wire transfer or check drawn on a domestic bank.

4.2    **Disbursing Agent**. All Distributions and/or payments under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All Cash received by the Disbursing Agent shall be kept in a segregated escrow account maintained at a banking institution that is an authorized depository in the Eastern District of New York.  The Disbursing Agent shall not be compensated for services rendered under the Plan (excluding legal matters relating to the closing and objections to claims).  The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed.  The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtor. Furthermore, and except to the extent expressly provided in this Plan or the Confirmation Order, the Disbursing Agent shall have the express authority to execute a deed to the Property and other conveyance documents in place (including, but not limited to the appropriate transfer tax returns), instead of members of the Debtor, or other authorized parties of

15

the Debtor, and shall have no other powers or authority with respect to the Debtor. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor.  In addition to the foregoing, the Disbursing Agent shall be entitled to open and maintain an Interest on Lawyers Account (IOLA) with Goldberg Weprin Finkel Goldstein LLP at a Southern District of New York authorized depository.

4.3    **Rights and Powers of Disbursing Agent**. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) to object to claims and make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

4.4    **Disputed Claims Reserves**.  No distributions shall be made with respect to any Disputed Class 2 Claim.  Instead, the Debtor shall deposit into one or more segregated accounts (the "Disputed Claims Reserves," each being a "Disputed Claims Reserve") funds equal to 100% of the Cash that would be distributed under the Plan to the holder of a Disputed Class 2 Claim that would be an Allowed Claim, but for the dispute.  In determining the amount of the Cash to be distributed under the Plan to the holders of Allowed Claims, the calculation of the amount to be distributed to each holder of an Allowed Class 2 Claim in such class shall be made as if all Disputed Class 2 Claims were Allowed Claims in their respective face amounts.  The Debtor or any other party in interest shall have the right to seek an Order of the Bankruptcy Court, after notice and a

16

hearing, estimating the amount of a Disputed Claim, and limiting the amount of Cash that must be so deposited.

4.5    **Prosecution of Objections**.  Debtor shall have the right to file, settle, compromise, withdraw or litigate, to final order or judgment, objections to Disputed Claims.  Objections to Claims, other than Administrative Expense Claims, shall be served and filed on or before the Claims Objection Deadline, and objections to Administrative Expense Claims shall be served and filed on or before the Administrative Expense Claims Objection Deadline.

4.6    **Objection Deadline.** The Debtor may serve any objection to any Class 2 Claim or Interest at any time, but in no event after the Effective Date for Class 2 Claims that are otherwise entitled to payment on the Effective Date or, for all Class 2 Claims that are otherwise entitled to payment after the Effective Date, the later to occur of: (i) thirty (30) days following the Effective Date; or (ii) thirty (30) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

4.7    **Distribution After Allowance**.  Within ten (10) days after entry of a Final Order finding all (or part of) a Disputed Class 2 Claim to be an Allowed Claim (or as soon thereafter as practicable), Debtor shall distribute from the funds placed in the Disputed Claims Reserve with respect to such Claim, all Cash, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Class 2 Claim that has become an Allowed Claim.

4.8    **Delivery of Distributions**.  Distributions to holder of Allowed Claims shall be made: (i) at the address set forth on the respective Proof(s) of Claim or other request(s) for payment filed by the holder of such Allowed Claim; (ii) at the addresses set forth in any written notices of

address change delivered to the Debtor; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Debtor has not received a written notice of change of address.  If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim or Allowed Interest.  Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution").  A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder.  If such a notice is provided, then, after receipt of such additional information as the Debtor may require confirming the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter. All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

4.9    **Distribution of Third-Party Sale Proceeds.**  The Sale Proceeds realized from the sale of the Property to a bona fide third-party shall be distributed in conjunction with other Available Cash to the holders of Allowed Claims and Interests in the order provided in Section 3.4(e) above.

## ARTICLE V

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     **Assumption of Executory Contracts.**   On the Effective Date, and except to the extent that the Successful Purchaser has directed to the contrary as provided in the succeeding sentence, all residential leases, commercial leases, and other contracts to which the Debtor is a party as landlord shall be deemed assumed for purposes of the Plan with any defaults to be addressed in the regular course of business between the Debtor and the counterparties. At Closing, and unless the Successful Purchaser has requested as part of the Sale that any commercial lease or other contract be terminated without liability pursuant to its terms or rejected, all residential and commercial leases, as well as any other assumed executory contracts, shall be deemed assumed and assigned to the Successful Purchaser pursuant to one or more separate assignment documents as part of the Property Transfer Instruments.

## ARTICLE VI

## CONFIRMATION AND CONSUMMATION OF THE PLAN

6.1     **Injunction against Interference with the Plan.**     Except as otherwise noted there the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Debtor's Estate, including the Property and the Property Causes of Action sold under this Plan (except to the extent such Property is sold subject to the Lender's lien); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Debtor's Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to the Lender's lien).   Since this Plan provides for the liquidation of all or substantially all of the

property of the Debtor's Estate, the confirmation of the Plan will not result in a discharge of the Debtor's pre-petition obligations and claims. Upon entry of the Confirmation Order, all holders of Claims against or interests in the Debtor and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or the sale of the Property.

6.2    **Conditions to Effective Date.**    The Plan will not become effective, and the Effective Date will not occur, unless and until:

(a)    The Confirmation Order has become a Final Order;

(b)    The Bankruptcy Court shall have approved a sale of the Property either as part of the Confirmation Order or separately;

(c)    The sale of the Property has closed;

(d)    The payments required pursuant to the Plan shall have been made either from the Available Cash or the Lender's Contribution, as applicable; and

(e)    The adversary proceeding commenced agreement the Lender in the Chapter 11 case of affiliated Debtor LENY Berry Mezz LLC shall have been dismissed with prejudice, and such Chapter 11 case itself shall have been dismissed pursuant to an Order in form and substance reasonably acceptable to the Lender.

6.3    **Execution of Documents.** The Debtor shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan.  Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments

for filing and recordation and if the Debtor refuses to execute or deliver any such documents or notices, the Lender shall be authorized to execute such documents and/or notices on the Debtor's behalf, and the Confirmation Order shall expressly so provide.

6.4    **Limitation as to Liability**. Neither the Debtor nor its attorneys, members, managers and the CRO nor the Lender or its attorneys, members and managers shall have or incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the Sale of the Property or formulation, preparation, prosecution, dissemination, confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Case or this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages.  In addition, any release exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability.  Nothing in the Plan nor the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against (i) the Debtor, or (ii) any of the Debtor's members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns.  In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of

liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

6.5    **Binding Effect.**  Subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of the Plan will bind every holder of a claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

**ARTICLE VII**

**<u>RETENTION OF JURISDICTION</u>**

7.1    **<u>Retention of Jurisdiction</u>**.  The Bankruptcy Court shall retain post-confirmation jurisdiction over the following matters:

7.1.1    To allow or disallow in whole or in part any objections filed prior to the Claim Objection Deadline.

7.1.2    To grant or deny the applications for allowance of final compensation and reimbursement of expenses of Professionals.

7.1.3    To enter an order or final decree concluding the Cases following the Sale of the Property, payment of allowed claims, resolution of all disputes, and distribution of all reserves.

7.1.4    To allow, disallow, determine, liquidate, classify, estimate, or establish the treatment of any Claim.

7.1.5    To decide and determine all matters related to the granting and denying, in whole or in part, of any Professional Compensation;

7.1.6    To decide any dispute relating to the sale of the Property prior to a closing thereon;

7.1.7    To adjudicate any motions, adversary proceedings, applications or contested matters that may be pending on the Effective Date; and

7.1.8    To enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan, and the distributions hereunder.

**ARTICLE VIII**

**GENERAL PROVISIONS**

8.1    <u>**Headings**</u>.  The headings in the Plan are for reference purposes only.

8.2    <u>**Contents of Confirmation Order**</u>.  The Confirmation Order shall be in form and substance satisfactory to the Debtor and the Lender, and may contain various provisions deemed necessary to clarify, implement or enforce the Plan and Sale of the Property.

8.3    <u>**Orders in Aid of Consummation**</u>.  Pursuant to §§ 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation and/or consummation of the Plan directing the implementation of matters or actions required by the Plan.

8.4    <u>**Compliance with Tax Requirements**</u>.  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to applicable withholding and reporting requirements; *provided, however*, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extend provided under § 1146 of the Bankruptcy Code.

8.5    <u>**Due Authorization by Creditors**</u>.  Each and every Creditor who elects to participate in the distributions provided for under the Join Plan warrants that it is a lawful owner

of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, Encumbrances, commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights released, or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

8.6     **Amendments and Modifications.**   The Plan may be altered, amended or modified by the Debtor, solely with the consent of the Lender, at any time before the substantial consummation of the Plan, as provided in §§ 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

8.7     **Request for Relief under § 1129 (b).**   If the Plan is accepted by one or more, but not all, classes of Creditors that are found to be impaired by the Plan, Debtor may request confirmation under § 1129(b) of the Bankruptcy Code.

8.8     **Filing of Additional Documents.**   Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

8.9     **Computation of Time.**   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

8.10     **Successors and Assigns.**   The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

8.11     **Quarterly Fees.**   All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtor until the closing of the Case under 11 U.S.C. §350(a).

    8.12   **Post-Confirmation Reports.**  The Debtor shall file quarterly status reports until the Chapter 11 Case is closed.

Dated: New York, NY
       July 31, 2024

 

                          Goldberg Weprin Finkel Goldstein LLP
                          *Counsel for LENY Berry Holdings LLC*
                          125 Park Avenue, 12th Floor
                          New York, New York 10017
                          (212) 221-5700
                          knash@gwfglaw.com


                          By:     /s/ Kevin J. Nash, Esq.


                          LENY Berry Holdings LLC


                          By:     /s/Ephraim Diamond